## Richmond.

DOOLEY V. BAYNES.

MARCH 13th, 1890.

1. ADMISSIONS AS TO TITLE—*Privies.*—Declarations accompanying the act of possession in disparagement of claimant's title or otherwise, qualifying his possession, are admissible in evidence not only against declarant, but those claiming under him.

2. IDEM—*Partition.*—Such admissions by grantee of deed on its face absolute and for a valuable consideration, are admissible to show that the deed was merely intended as a deed of partition between coparceners, and, therefore, no conveyance at all, because "partition makes no degree."

3. EJECTMENT— *Wife's maiden land—Case at bar.*—In ejectment where wife's heirs demanded land in possession of husband's grantees, on the ground it had descended upon her from her father, though wife's brothers had conveyed it to her and her husband by deed reciting a consideration, but which the heirs claimed was only a deed of partition, the declarations of husband that the land had come to wife from her father, and that he had only a life estate in it: *held,* admissible against said grantees.

4. HUSBAND AND WIFE—*Separation—Tenancy by the Curtesy—Case at bar.*— Husband and wife separated by agreement setting apart to wife one-third of the land descended to her from her father, free from all claims of the husband, but stipulating nothing as to the remainder whereon he continued to reside: *held,* he derived his tenancy by the curtesy through his wife, and did not hold adversely to her, or to her heirs after her death.

Appeal from decree of circuit court of Pittsylvania county rendered April 25, 1887, in the chancery cause wherein Lucy Baynes and others were complainants, and Henry C. Dooley was defendant. The decree being in favor of the complainant, defendant appealed. Opinion states the case.

*Henry E. Barksdale*, for the appellant.

*Staples & Munford*, for the appellees.

Lewis, P., delivered the opinion of the court.

This was an action of ejectment in the circuit court of Pittsylvania county, brought by the heirs-at-law of Polly Arnett, deceased, to recover a tract of one hundred and fifty-one acres of land situate in that county. At the trial, neither party requiring a jury, the case was submitted to the court, and judgment rendered for the plaintiffs; and on a writ of error to this judgment the case is now before us.

It appears from the record that Polly Arnett was a daughter and heir-at-law of James Woody, senior, who, it seems, died, intestate, about the year 1818, seized and possessed of considerable real and personal estate, and leaving five children, his heirs-at-law. There was never any suit brought for the partition of the land between the heirs, but partition thereof seems to have been made *in pais*. A number of deeds, which, it was claimed, were partition deeds by and among the heirs, were offered in evidence by the plaintiffs, and among these deeds was one purporting to be "between Thomas Woody, James Woody and his wife, of the one part, and Joseph Arnett and Polly his wife, all of the county of Pittsylvania, of the other part." The deed recites that it was made for and in consideration of five hundred and sixty dollars to the parties of the first part in hand paid by the said Joseph and Polly Arnett, and embraces two hundred and sixteen acres of land. The deed, however, was not signed or acknowledged by the wife of James Woody, nor is her name even mentioned in the deed, but was signed and acknowledged by Thomas and James Woody only. The deed bears date February 8, 1822, and was duly recorded.

Joseph and Polly Arnett lived together on the land until

some time in the year 1840, when a suit for a divorce was brought by the latter against the former, which seems to have been compromised by the parties entering into an agreement for a separation, whereby Joseph Arnett agreed, among other things, to lay off and assign to the plaintiff one-third of the land, according to quality and quantity, "to hold as her own." Under this agreement sixty-one acres of the land were assigned for the benefit of Mrs. Arnett, possession of the residue, to-wit, one hundred and fifty-one acres (which is the land in controversy) being retained by Joseph Arnett, who continued in possession thereof until the 17th of January, 1881, when, for valuable consideration, he conveyed it to the defendant in this action, Henry C. Dooley.

At the time of this conveyance to Dooley, Polly Arnett was dead. Joseph Arnett died in 1883, and the action to recover the land was commenced in 1885.

The principal question in the case, and to which the argument at the bar was chiefly directed, is whether the land was the maiden land of Mrs. Arnett, derived by descent from her deceased father, or whether it was land belonging to her brothers, Thomas and James Woody, and by them conveyed in fee simple to her and her husband jointly by the above-mentioned deed of February 8, 1822. If the latter view be the correct one, then the deed vested in the husband and wife, as the law in Virginia was prior to the revisal of 1849, an estate by entireties, with the right of survivorship in fee to the longest liver. *Thornton* v. *Thornton*, 3 Rand., 179; *Norman* v. *Cunningham*, 5 Gratt., 63; 2 Min. Inst., 411.

But we are of opinion that this is not the correct view, and that the plaintiffs, as the heirs-at-law of Polly Arnett, are entitled to recover, as the circuit court held.

That the land was inherited by Mrs. Arnett from her father is, we think, very clearly established by the evidence. In the bill for divorce, filed by her in 1840, it was charged that the two hundred and sixteen acres of land came to her "by the

bounty of her father"; and in his answer, the defendant, Joseph Arnett, admitted that he came into possession of the land "as part of the estate of the plaintiff." So, also, in the agreement for a separation, the land is described as the land mentioned in the bill.

But this is not the only evidence on the subject. Three witnesses, who were introduced by the plaintiffs, testify to certain declarations and admissions by Joseph Arnett before his conveyance to the defendant and whilst he was in possession of the land in controversy, which are decisive of the case. The first of these witnesses, Jackson Walters, testified that on one occasion he proposed to Joseph Arnett to buy timber growing on the land, but that he refused to sell, saying the land came to him by his wife, and that he had *only a life estate in it.* Another witness, Mrs. Lucy Baynes, one of the plaintiffs and a daughter of Joseph and Polly Arnett, testified that she had frequently heard her father declare that the land was his wife's, and that it came from her father; that the heirs of James Woody, the elder, divided his lands among themselves, and that he (Joseph Arnett) paid nothing for the land. The third witness testified to the same effect, saying further, that on one occasion he offered to buy a part of the land in controversy from Joseph Arnett, when the latter told him his wife had gotten the land from her father's *estate,* and that he had only a life estate in it. The same witness also says he heard Arnett make similar admissions respecting his title repeatedly.

That these declarations are admissible in evidence is disputed by the appellant, but their admissibility would seem to be too plain to admit of doubt.

"In regard to the declarations of persons in possession of land, explanatory of the character of their possession," says Greenleaf, "there has been some difference of opinion; but it is now well settled, that declarations in disparagement of the title of the declarant are admissible as original evidence. Possession is *prima facie* evidence of seizin in fee-simple; and the

declaration of the possessor that he is tenant to another, it is said, makes most strongly against his own interest, and therefore is admissible. But no reason is perceived why every declaration accompanying the act of possession, whether in disparagement of the declarant's title, or otherwise qualifying his possession, if made in good faith, should not be received as part of the *res gestœ,* leaving its effect to be governed by other rules of evidence." 1 Greenl. Ev., sec. 109.

The principle, more fully expressed, upon which such declarations are admissible as original evidence, is, that the declarant probably knew the truth, and that his own interest, which would naturally influence him not to make untrue admissions to the prejudice of his title, is a sufficient security against falsehood. And not only are such admissions admissible against the declarant, but equally so against persons subsequently deriving title through or from him, because of the privity of estate, or identity of interest, that subsists between the parties. 1 Greenl. Ev., sec. 189; *Jackson* v. *Bard,* 4 Johns., 230; *Norton* v. *Pettibone,* 7 Conn., 319; *Padgett* v. *Lawrence,* 10 Paige, 170; *Pitts* v. *Wilder,* 1 N. Y., 525; *Chadwick* v. *Fonner,* 69 *Id.,* 404; *Noyes* v. *Morrill,* 108 Mass., 396; *Horton* v. *Smith,* 42 Am. Dec., 631, and cases cited.

The appellant, however, contends that the deed from Thomas and James Woody was, on its face, an absolute deed to Joseph Arnett and wife, and therefore that the admissions of Arnett are not competent to destroy it; and, among other cases, the case of *Dodge* v. *Freedman's Sav. and Trust Co.,* 93 U. S., 379, is relied upon. In that case it was said that while the declarations of a party in possession of land are competent evidence against those claiming the land under him, yet they are competent only to show the character of the possession of the person making them, and *by what title he holds,* but not to sustain or destroy the record title.

There is no conflict between that case and the views already expressed; for here Joseph Arnett never claimed title under the

deed from Thomas and James Woody, but through his wife, who derived title by descent from her father; nor are his declarations inconsistent with that deed.   There is nothing on the face of the deed which negatives the idea that it was simply a deed of partition, although it was executed by only two of the heirs, and although it recites a consideration of five hundred and sixty dollars; and the fact that it was not executed by the wife of James Woody is an additional circumstance tending to show that the land mentioned in the deed was not the property of those who signed the deed, but a portion of the estate of James Woody, the elder.

Where land is conveyed by an absolute deed, and the grantee takes possession under it, it is not disputed that his declarations are not admissible to give to the deed a construction different from that which the law gives to it—as, for example, if the deed conveys a fee, that a life estate only was conveyed—but that is a very different case from the present.   There is surely no principle which excludes parol evidence to show that a deed, which is apparently an absolute deed, is, in reality, a partition deed between coparceners, and therefore no *conveyance* at all; and that is precisely this case.   Such a deed is not a conveyance, because, as the phrase is, the partition makes no degree, but leaves each parcener seized as by descent from the common ancestor; and hence the law in 1822 was settled, in this state at least, that partition amongst coparceners might be made as well by parol as by deed. *Bolling* v. *Teel*, 76 Va., 487; *Yancey* v. *Radford*, *ante* p. 638; but see now Code 1887, sec. 2413.

Of course, admissions of the kind we have been considering are not absolutely conclusive.' On the contrary, the general rule with respect to all verbal admissions, is that they ought to be received with caution.   Yet, when they are deliberately made and precisely identified, they afford evidence of the most satisfactory nature.   1 Green. Ev., sec 200.

It would be strange if the position of the appellant could be

maintained. The law prescribes the mode whereby the estate of a married woman in lands may be divested; and this provision of the law would be virtually set at naught if the effect were given to the deed of February 8, 1822, for which the appellant contends. *Drury* v. *Foster*, 2 Wall., 24; *Bolling* v. *Teel, supra.*

So also is the idea of adverse possession on the part of Joseph Arnett a mistaken one. There was never a moment of time when he held the land adversely either to Mrs. Arnett in her lifetime, or, after her death, to the plaintiffs. He was tenant by the curtesy, and his title was derived from and through her. And as to the agreement for a separation, that does not in any way affect the case. It simply stipulated that one-third of the land should be set apart to the wife, free from all claims of the husband, without any stipulation as to the residue whatever—which he, therefore, continued to hold, as tenant by the curtesy, until his conveyance to the defendant in 1881. An agreement for a separation does not relieve the wife from any of the ordinary disabilities of coverture, nor has it any other legal force and effect than the obligation contracted by the husband with trustees to provide for the maintenance of the wife. *Switzer* v. *Switzer*, 26 Gratt., 574; 1 Min. Inst., 288.

The only adverse holding in the case was that of the defendant under the deed from Joseph Arnett. That deed, purporting as it did, to transfer the title, gave color of title to the defendant; but as the action was commenced within the statutory period, his possession had not continued sufficiently long to ripen into a good title.

Much was said in the argument as to the hardship on the defendant of permitting a recovery by the plaintiffs. But the hardship, on the other had, would be greater if the plaintiffs were deprived of the land inherited by them from their mother (and which she inherited from her father), simply because the defendant chose to take a conveyance of it, without sufficiently investigating the title beforehand. He saw, it

is true, the recorded deed of February 8, 1822; but that, as already remarked, was no conveyance at all, and there was no adverse possession under it. Nor is it pretended that there was any title of record in Thomas and James Woody to the land in question; and if there was none, that circumstance was enough of itself to impose upon the defendant the duty of inquiry. At all events, no title was conveyed by the deed just mentioned, and hence, although it may have been recorded for more than fifty years when the defendant purchased the land, it did not affect the title of Mrs. Arnett, nor could he acquire any title under or by virtue of it as against the plaintiffs, who derive their title from her.

It does not appear that she ever knew the deed was made to herself and husband jointly, or that the defendant was induced to purchase the land by representations made either by her or by the plaintiffs. In fact, when the purchase was made she was dead. The doctrine of estoppel *in pais*, therefore, has no application to the case, if, indeed, the doctrine is applicable to the estates of married women in any case. 3 Washb. Real Prop. (3d ed.), marg. p. 477; Bigelow, Estoppel, 485 *et seq.* In *Bank of United States* v. *Lee*, 13 Pet., 107, it was decided that a wife is not estopped by her mere silence, even when she knows her husband is holding out her property as his own: and there are numerous authorities to the same effect.

FAUNTLEROY, J., and HINTON, J., dissented.

JUDGMENT AFFIRMED.