LAMAR *et al. v.* PEARRE, and *vice versa.*

1. Under the system of pleading prevailing in this State, the positive and unqualified charges of material facts contained in a bill in equity praying for relief and waiving discovery, though the bill be signed by counsel only and not sworn to by the complainants, are not mere suggestions of counsel, but are imputable to the complainants as declarations made by them; and in other suits to which they are parties, may be given in evidence as their admissions.

2. A certificate of the clerk of the superior court stating two cases by name, and adding "that the above stated cases have been duly dismissed, as appears from the dockets of said court," is not admissible in evidence to show that the cases were in fact dismissed.

3. A witness testifying that she was so young at the time, that she did not know from whom certain property was bought, or where the money came from to pay for it, but saying she knows now that the money came from a specific fund, shows by her own testimony that what she calls her present knowledge is not her own personal knowledge of the fact, but a state of mind produced by hearsay, or something else by which she has been enlightened since the fact occurred, nothing appearing to explain how or by what means her so-called knowledge was produced, or from what source it was derived.

4. A trustee for a life-estate only having sold and conveyed the fee, and the remaindermen having, after the death of the tenant for life, brought suit against the purchaser to assert their title in remainder and to recover the premises, the mere fact that pending this suit they filed a bill against a purchaser from the tenant for life, in which they claimed other property as being the proceeds of sale by the trustee of some or all of the original trust property, would not defeat the action, although the property sought to be reached as proceeds was such in fact, and the complainants had full knowledge of the fact at the time of filing the bill.

5. If the trustee of the life-estate sold the fee and received the purchase money for the whole, and if he afterwards invested some of that purchase money in other lands; and the remaindermen, after the death of the life-tenant, appropriated these other lands to their own use with knowledge of all the material facts, their so doing was a ratification of the sale and conveyance of their estate in remainder by the trustee, and they would be estopped from recovering from the purchaser their remainder interest. If they did not have knowledge of the facts, they would, upon proper equitable pleadings, be liable to account in the present action for so much of the value of the lands received by them as would equal the proceeds of their remainder in the original trust property which were invested in these lands, with interest thereon. To the ratification here spoken of, the terms of sections 2192 and 2194 of the code would apply.

6. Under the rule that the declarations of a person since deceased, against his interest and not made with a view to pending litigation, are competent evidence, declarations made by one in possession of lands and holding them as apparent owner, to the effect that they were purchased with proceeds of the sale of certain premises, and that they were trust property standing in lieu of these premises, the declarant being now dead, are admissible in

evidence against the remaindermen under the original trust referred to in favor of a purchaser of the original trust lands, these being the premises now in dispute, and the declarant having been a tenant for life in these premises under the same trust in which the title in remainder now sought to be enforced had its origin. Declarations by a tenant for life in possession of the proceeds of a trust fund, by which declarations she virtually admits that her estate in these proceeds is limited to her own life, are against her interest, for the reason that, presumptively, a person in possession of property apparently as owner is such owner, not for life only, but in fee. Collateral facts relevant to the principal fact, and embraced with it in a declaration made against interest, may, as well as the principal fact itself, be proved by the declaration.

August 27, 1892.

Evidence. Admissions. Estoppel. Title. Trusts. Remainders. Before Judge RONEY. Columbia superior court. September term, 1891.

McNEILL & LEVY, M. H. BLANDFORD and P. B. JOHNSON, for plaintiffs.

W. M. & M. P. REESE, for defendant.

LUMPKIN, Justice.

A second trial of this case, in pursuance of the decision of this court in 82 *Ga.* 354, resulted in a verdict for the defendant; and to a judgment overruling plaintiffs' motion for a new trial, they excepted on several grounds.

1. The court admitted in evidence an exemplified copy of a bill filed by the present plaintiffs and others in Bibb superior court against C. T. Ward, seeking to recover certain land which they claimed had been purchased with proceeds of the sale of some of the property included in the trust, which trust covered the property now in dispute. The bill was not signed nor sworn to by the complainants therein, but bore only the signature of their solicitor. The relevancy of the evidence is not questioned, but it is alleged that its admission was error because it contained merely the "suggestions of counsel." Professor Greenleaf, in his excellent treatise on evidence (vol. III, §274) advises

us that:  "Ordinarily the bill is  drawn by the solicitor
upon the general instructions given by his client, and is
signed by the solicitor only; and  hence it has been re-
garded as the mere statement of his counsel, frequently
fictitious and hypothetically constructed in order to ex-
tract a more complete answer from the defendant.  On
this ground it has been laid down as  a rule in England
that, 'generally speaking, a bill in chancery cannot be
received in  evidence in a court of law to prove any
facts either alleged or denied in such bill.' "  It will be
remembered that, under the ancient system of chancery
practice, the pleadings were prepared by experts who
did not appear in the courts.  The pleadings themselves
were framed upon a " fictitious and hypothetically con-
structed " plan for the purpose of eliciting  fuller infor-
mation by way of answer from the defendant.  Our
judiciary act of 1799 had for one of its main purposes
the abolition of fictitious forms of pleading.  It enacted
that, in suits at law, the plaintiff should set forth his
cause of action plainly, fully and distinctly, and that
"the ordinary proceeding in chancery shall be a bill,
which shall be addressed to the superior court, or the
judge presiding therein, and shall *plainly* set forth the
ground of complaint," etc.  With the exception of the
common law forms in actions of ejectment and trover,
those old fictions in pleadings have long been unknown
in the system of pleading in Georgia.  Our courts have
followed the mandate of the enactment above recited,
and have required suitors in both forums to set forth
*plainly* their  grounds of complaint.  The general term
"attorney" includes the powers and duties of the solici-
tor and barrister, and in our courts no distinction is
recognized as to the several branches of legal work
which were, in ancient times, parcelled out amongst
several classes.  The one license confers upon the
attorney full power to conduct the cause for his clients

through all its stages, and to bind them in all matters pertaining thereto, save where the law has expressly limited his authority. The constitution guarantees to a suitor the right to appear in person or by attorney, and either mode of appearance is as binding as the other. Hence, when the suitor elects to appear by counsel, and plainly sets forth his cause of complaint, all the allegations of fact material and necessary to the complaint, made in the pleadings by the counsel, are, in legal contemplation, those of the complainant himself. Being such, they are declarations of the complainant, and if against his interest, are admissible in evidence against him under the ordinary rules governing admissions. Like other admissions, they are subject to explanation and qualification, unless the circumstances render them estoppels under the law. Inasmuch as our system of pleading has done away with the fictions of the English system upon which was founded the English rule, it follows that, the reason for the rule having ceased, the rule itself should be no longer observed.

The two cases relied upon by plaintiffs do not conflict with this ruling. In *Sciple* v. *Northcutt*, 62 *Ga.* 42, the question was whether a sworn bill could be introduced without an amendment which had been made; and in *Carr* v. *Emory College*, 32 *Ga.* 557, it was ruled, not that a bill was inadmissible as containing admissions, but that the entire record of another case, under the facts, was not admissible to show an estoppel.

2. The court having properly admitted in evidence the bill just referred to, the plaintiffs sought to escape the effect of the admissions contained therein by introducing, over defendant's objection, a certificate from the clerk of the court in which it was filed, to show that it had been dismissed. This certificate stated this case and another by name, and added, " the above stated cases have been duly dismissed, as appears from the

dockets of said court." In the case of *Miller* v. *Rein-hart*, 18 *Ga.* 239, it was held erroneous to admit in evidence a certificate from the clerk of the superior court that a named person was duly naturalized. This court, speaking through BENNING, J., said: "The certificate does not give the words of any part of the record. The certificate seems to be a statement of what, in the clerk's opinion, is the legal import or effect of the different particulars of which the record may consist." So, in the case at bar, the certificate objected to does not pretend to furnish any part of the dockets or records of the court, but certifies to the clerk's opinion as to the effect of entries which are within his custody. It would be unsafe, to the last degree, for one court to act upon the clerk's opinion as to the effect of records in another court; and if the decision in 18 *Ga.*, *supra*, was correct, as we are satisfied it was, the court below erred in admitting the certificate objected to in this case. See, also, *Dillon* v. *Mattox*, 21 *Ga.* 113; *Martin* v. *Anderson, Id.* 301.

3. Over plaintiffs' objection, a witness for defendant was permitted to testify that at the time of certain purchases of land, she was too young to know from whom it was bought or the source of the purchase money, but that at the time of testifying, she knew that the money came from a specified fund. The objection was, that this testimony was hearsay, and we think the objection well founded. The testimony shows intrinsically that her present knowledge, as she designates it, is not her personal knowledge of the fact to which she testifies, but that she is asserting her *belief* of the facts, produced by hearsay or otherwise. She does not explain how or from what source her "knowledge" at the time she testified was derived so that she could then know, in the legal sense of the term, that which she says she was too young to know at the time of the occurrence. It

is therefore manifest, so far as the record discloses, that her so-called knowledge must have been obtained from hearsay, and the court erred in not rejecting this testimony. In this connection, we examined the case of Willey v. Portsmouth, 35 N. H. 303, relied on by counsel for Pearre; but if it conflicts with the ruling here made, it fails to convince us that this ruling is not sound.

4. The position of the plaintiffs below was, that their title in remainder to the land in controversy never having been legally divested, they must necessarily recover. The defendant insisted that though the sale to him by John Lamar, as trustee, did not pass the legal title as against these plaintiffs, his title had become valid and binding on them by ratification. In support of this contention, it was, among other things, urged that after bringing suit against Pearre to assert their title in remainder and to recover the premises from him, the plaintiffs, pending this suit, had filed a bill against one Ward, who had purchased from the life-tenant, before her death, certain property in Vineville, in which bill they claimed that the property last mentioned was bought with funds arising from the sale by the trustee of some or all of the original trust property, and for this reason they were entitled to recover from Ward the property he had so purchased. In this connection it was argued that the evidence showed the trustee had used money received by him from the defendant for the land now in dispute in buying the Vineville property, and that, consequently, the filing of the bill amounted to such a ratification of the trustee's conduct as would conclusively estop the plaintiffs from further proceeding with their suit against the defendant. Even if the facts were as stated, and the plaintiffs so knew, we do not think the mere fact of filing this bill would defeat them in the action first brought, if otherwise entitled to re-

cover therein. There can, of course, be no doubt that, under such facts, the purpose of the bill was inconsistent with their right to maintain the suit previously brought against the defendant, because they *could not recover* on the bill unless they either recognized as legal the sale of the fee by the trustee to Pearre, or else ratified it; but still we do not think that simply filing the bill necessarily and completely cuts them off from proceeding with the first action. Under the ruling made by this court in *Hamilton et al.* v. *Williford,* 90 *Ga.* 210, 15 S. E. Rep. 753, it is clear they could not have a favorable decree upon the bill, if their right to do so depended upon the fact that the trustee had invested money received from Pearre in the property held by Ward, without first dismissing the action against Pearre. In Van Winkle *et al. v.* Crowell *et al.,* decided October 31, 1892, 13 Supreme Ct. Rep. 18, the Supreme Court of the United States held, that the sellers of personalty, after bringing an action to enforce a lien thereon, which necessarily asserted title in the defendants, were thereby barred from bringing an action of detinue for the recovery of the property, although the first action had been dismissed without trial. According to the principle thus announced, it would seem that Hamilton, in the case *supra,* could not have proceeded with his action to recover the lots, even if he *had dismissed* his proceeding to foreclose a lien thereon.

In the case at bar, it may be that the plaintiffs, by abandoning their action against Pearre, could have properly sued for property bought with the proceeds of the land sold to him, because, notwithstanding the bringing of the suit against him, it might still have been in their power to dismiss it and ratify the sale by the trustee; but it is quite certain, in view of the above authorities, they could not successfully sue for the Vineville property while the action against Pearre was still

pending. Under these circumstances, the bill, as a proceeding to recover property, and with reference to its ultimate result, was nothing more than a mere nullity, and should not operate as a complete estoppel on the plaintiffs. If the bill had been maintainable, and had been pressed to fruitful results of which the plaintiffs obtained the benefit; or if, under the law applicable to election of remedies, the bill had been filed in the first instance, the question would be altogether different.

At the last trial, the plaintiffs, as already seen, introduced a certificate of the clerk, for the purpose of showing that the bill had been dismissed, but the evidence in this form was not legally admissible. If the plaintiffs should be able to prove by proper evidence that the bill was voluntarily dismissed before any adjudication or decree was had upon its merits, would the mere fact of having filed it be anything more than a very solemn admission of facts *tending to show* they had ratified the sale to Pearre, and therefore really had no cause of action against him? This, in our opinion, is what it would amount to, and such an admission, though made *in judicio*, is not absolutely and forever conclusive against the parties making it. It would at last, under proper instructions from the court, be a question for the jury, taking into consideration the fact that the plaintiffs had already sued Pearre, and all the other attendant facts and circumstances, to decide whether or not the admission, so made, signified an intention to ratify the sale to Pearre by the trustee.

The question under consideration has been discussed thus far on the assumption that the Vineville property was actually paid for with money derived from the sale to Pearre, but, in point of fact, this was, on the trial, a disputed question upon which evidence was introduced on both sides. The bill itself does not distinctly allege that the money received by the trustee from Pearre did

go into the purchase of the Vineville property. We quote from it all that is pertinent to this matter. The bill states: "That on the 7th day of February, 1862, said John Lamar, trustee, as aforesaid, with a portion of said trust fund, purchased from one E. W. Thompson the following property" (describing property in Vineville, Bibb county, Ga.) That said trustee put Mary Ann Lamar in possession to occupy and enjoy the same, which she did until the —— day of ——, 18 —, when she sold the property to C. T. Ward. "Orators allege that said land was purchased with the trust funds arising from the sale of the trust property by the said John Lamar, trustee, so bequeathed in trust to said Mary Ann Lamar during her life, and at her death to her children, of which fact C. T. Ward had full and legal notice when he purchased the same from said Mary Ann Lamar and took her deed thereto." "That said property is therefore encumbered with the provisions and limitations of the original trust estate created by the will of said Gazaway Davis, and the property originally bequeathed to orators. The trust funds which arose from the sale of said property having been invested by said John Lamar, trustee, in said property now in possession of said C. T. Ward, that in equity the title of said property is in your orators, and they are entitled to follow said trust fund and have the property declared theirs." Wherefore they pray "that said described lands shall be decreed to have been purchased with the trust fund belonging to orators, and to be held by said C. T. Ward as the trustee of orators." Of course, these allegations are susceptible of the construction that the proceeds of the sale to Pearre were used in purchasing the Vineville property, but they will also admit of a different construction, and may be explained and made clear by extrinsic evidence.

Without intending to qualify what is ruled in the

4th head-note, and being satisfied it is sound law, even under the assumption therein stated, we think that, in view of the contested issue as to whether or not Pearre's money really went into the Vineville property, and of the uncertain allegations in the bill with reference to this matter, it is unquestionably true in the present case that the filing of this bill did not, of itself, defeat the plaintiffs' action, and that the bill is only useful as evidence of admissions by complainants, the probative value of which the jury should determine in the light of all the facts.

5. Again, it was contended for the defendant that, according to a decided preponderance of the evidence, the trustee invested some of the money he had received from Pearre in certain lands in Baker county, and that the remaindermen, including the present plaintiffs, after the death of Mrs. Lamar, the life-tenant, with a full knowledge of all the material facts, appropriated these lands to their own use, sold them and divided the proceeds among themselves, and thus ratified the sale and conveyance by the trustee to Pearre of their estate in remainder in the land now in dispute. If all these things are true, it was a complete ratification of the sale to Pearre, and does estop the plaintiffs from recovering the land from him. Certainly they could not knowingly and deliberately accept, use and enjoy property his money paid for, and then say the transactions by virtue of which the trustee received and invested that money were not binding on them. Neither equity nor good conscience would permit them to repudiate these transactions, and at the same time take therefrom substantial benefits. The plaintiffs denied the truth of the defendant's contention as to these matters, and we do not express any opinion as to the merits of the controversy thus arising, but will leave the same to be determined by the jury when the case is tried again. If

it should then appear that the trustee did invest money received by him from Pearre in the Baker county lands, and that the plaintiffs, without knowledge of the real facts, received a portion of the proceeds of these lands, they would not, on this account, be estopped from prosecuting their present action; but they would be liable, on proper equitable pleadings filed by Pearre, to account to him for the value of the Baker county lands received by them, with interest. If that value should equal or exceed so much of the proceeds of their shares in remainder of the original trust property sold to Pearre as was invested in the Baker county lands, with interest thereon, their case against Pearre would be at an end, for in this event they would already have received all they were entitled to have. If, on the other hand, that value should be less than the proceeds of their shares so invested, they would have a right to recover from Pearre either such an interest in the land sued for, or such an amount of money as would make good the difference, allowing them interest, from the time of the death of the life-tenant, on the balance in their favor. As applicable generally to the subject of ratification herein discussed, see sections 2192 and 2194 of the code.

6. By cross-bill of exceptions, the defendant in error to the main bill complained that the court erred in refusing to allow him to prove by two witnesses admissions made by the deceased, Mrs. Lamar, while in possession of the Baker county lands and holding the same as apparent owner, to the effect that they were purchased with the proceeds of the sale of the land now in dispute, and were trust property standing in lieu thereof. Under the rule laid down in section 3776 of the code, this evidence should have been admitted. In Queen *v.* Birmingham, 1 B. & S. 163, Lord Cockburn says, "as soon as it is established, which it now is on the authority of Higham *v.* Ridgway [10 East, 109] and

the other cases, that you may receive the declaration of a deceased person as showing, not only something adverse to his interest, but all incidental facts contained in that declaration, so far as they are not foreign to it, it follows as a consequence that those collateral facts may be proved by the declaration, and that principle applies to the case before us." In the later case of Sly *v.* Sly & Dredge, 1 P. D. 91, decided in 1877, it was held that: "Declarations of a deceased person who has been in possession of property claiming a limited interest therein under a particular will, are admissible to prove the fact that such will had a legal existence, and also that certain persons were named as executors therein." And in delivering the opinion of the court, Hannon, Prest., says: "The statement that he took the life interest under a particular will seems one equally admissible, for it is a further limitation of his interest." In Dooley *v.* Baynes, 86 Va. 644, 10 S. E. Rep. 974, which was an action of ejectment by the heirs of a wife claiming against the grantees of her husband, declarations of the latter, he being dead, that he only had a life-estate, and that the land came to him through her father, were held admissible. See, also, Lassone *v.* Boston & L. R. R. Co. (Vt.), 24 Atl. Rep. 902, 46 Albany Law Journal, 273; *McLeod* v. *Swain,* 87 *Ga.* 156, and authorities there cited. We think it apparent, without further discussion, that the court erred in rejecting the evidence above mentioned.

*Judgment reversed on both bills of exceptions.*