**FOURTH DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J. and COOMER, J.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 28, 2019**

# In the Court of Appeals of Georgia

A19A0204. MCKENNEY'S INC. et al. v. SINYARD.

MILLER, Presiding Judge.

In this discretionary appeal, McKenney's, Inc. ("McKenney's"), and its insurer, Travelers Indemnity Company of America ("Travelers"), appeal the superior court's order reversing the decision of the Appellate Division of the State Board of Workers' Compensation ("the Board") denying the claim for benefits filed by Kevin Sinyard, McKenney's former employee. Because the Board's decision is supported by some competent evidence, and because it does not affirmatively appear that the Board's decision was based upon an erroneous legal theory, we must reverse the superior court's order.

After a workers' compensation decision becomes final at the administrative level, the parties have a right of direct appeal to the superior court, pursuant to OCGA § 34-9-105 (b). As a reviewing court,

the superior court applies an any-evidence standard of review to the Board's findings of fact, construing the evidence in the light most favorable to the party prevailing before the Board, and lacks authority to substitute itself as a factfinding body in lieu of the Board. Erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, however, are subject to the de novo standard of review in the superior court. Where it affirmatively appears that the Board's decision is based upon an erroneous legal theory, and that for this reason the Board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the Board for further findings.

An appeal to this Court from a decision of a superior court reviewing a decision of the Board is not a matter of right but rather is discretionary. OCGA § 5-6-35 (a) (1). Appeals to this Court are governed by the same standards of review as appeals to the superior court under OCGA § 34-9-105.

(Citations and punctuation omitted.) *Stokes v. Coweta County Bd. of Educ.*, 313 Ga. App. 505, 506-507 (722 SE2d 118) (2012). See also OCGA § 34-9-105 (c) (the superior court shall set aside the Board's decision where the Board acted without or in excess of its powers, its decision was procured by fraud, the facts found by the Board do not support the decision, there is not sufficient competent evidence in the record to warrant the decision, or the decision is contrary to law).

2

Viewed appropriately, the evidence shows that starting in 1978 Sinyard worked as a union pipefitter, working first as a welder and then as a foreman or supervisor. From 1986 to 1989, Sinyard worked for McKenney's at Piedmont Hospital in Fulton County. Sinyard worked for Cleveland Electric Company ("Cleveland") from 1994 to 1996, including on a project at the General Motors ("GM") assembly plant in DeKalb County in 1995. As a result of occupational exposure to asbestos, Sinyard was diagnosed with mesothelioma on June 5, 2014.

In July 2014, Sinyard and his wife filed through counsel an unverified complaint in an Illinois state court seeking damages based on Sinyard's mesothelioma. Significantly, in that case Sinyard named more than 80 defendants, comprising several companies and owners of premises where he worked after McKenney's, but he did not name McKenney's as a defendant. In his complaint Sinyard alleged that as a result of the defendants' conduct, he was "exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing [him] to develop the aforementioned asbestos disease[.]" Sinyard voluntarily dismissed the Illinois lawsuit without prejudice and then filed the underlying workers' compensation claim against McKenney's and Cleveland in January 2015.

McKenney's opposed the claim, arguing that under OCGA § 34-9-284 it was not Sinyard's employer when he was last injuriously exposed to asbestos. OCGA § 34-9-284 provides:

> Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, by whom the employer was insured when such employee was last so exposed under such employer shall alone be liable therefor, without right of contribution from any prior employer or insurance carrier. . . .

Sinyard eventually conceded that the evidence did not show Cleveland was his employer of last injurious exposure and focused his claim on McKenney's.

Sinyard produced evidence that he was injuriously exposed to asbestos while working for McKenney's at Piedmont Hospital, including: his own testimony and the testimony of a co-worker that his work involved disturbing and removing asbestos without proper protection from exposure and inhalation; records from the hospital showing the presence of asbestos in areas he worked; and the expert testimony of Dr. Jerrold L. Abraham, who opined that the asbestos exposure Sinyard experienced during this time caused his mesothelioma. Sinyard also testified that after his work for McKenney's he never worked with asbestos-containing materials or disturbed

asbestos, and representatives of some employers for which he subsequently worked testified that no asbestos was present or known to be present at his jobsites. Regarding the Illinois lawsuit, Sinyard testified that he did not participate in the preparation of the suit, that the complaint was not provided to him for his review, and that his counsel in the case essentially used his employment records and named all of his former employers as defendants.

The Administrative Law Judge ("ALJ") denied Sinyard's workers' compensation claim, ruling that despite "abundant" evidence of his injurious exposure to asbestos with McKenney's, he failed to carry his burden of proving by a preponderance of competent and credible evidence that McKenney's or Cleveland was his employer when he was last injuriously exposed to asbestos. The ALJ found that Sinyard's allegations of injurious exposure to asbestos after his time with McKenney's, as raised in the Illinois lawsuit, were admissions in judicio and therefore conclusive and binding against him. Alternatively, the ALJ found that these allegations could be used against Sinyard as admissions against interest, and to the extent the allegations merely raised a question of fact, the preponderance of evidence showed Sinyard's last injurious exposure to asbestos occurred after his time with McKenney's. The ALJ deemed not credible Sinyard's assertion that he suffered no

5

exposure to asbestos after McKenney's, finding that because asbestos is "invisible to the naked eye," Sinyard could have been injuriously exposed to it without his knowledge while working for subsequent employers.

The ALJ also found that there was "evidence to support a finding that [Sinyard] was injuriously exposed to asbestos while working for Cleveland at the GM assembly plant in 1995." The ALJ explained that in 1996, shortly after Sinyard worked there, asbestos was found in the plant's air handlers and an abatement was performed, and a reasonable inference could be drawn that Sinyard suffered an injurious exposure while breathing air that passed through the air handlers. The ALJ also determined that Sinyard's initial fee contract with his workers' compensation counsel was consistent with a claim against Cleveland, and not McKenney's, because in the contract Sinyard retained counsel to represent him with respect to an injury sustained while working in DeKalb or Gwinnett County during a time period ending in 1996.

Regarding Sinyard's arguments under *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286 (788 SE2d 421) (2016) ("*Scapa*"), that a de minimis exposure to asbestos is insufficient to establish legal causation and that a party must show through expert testimony that an exposure was sufficiently meaningful to establish causation, the ALJ distinguished *Scapa* on the basis that it involved a tort claim involving multiple

6

defendants where the factfinder must apportion liability, while in a workers' compensation claim OCGA § 34-9-284 imposes sole liability for an occupational disease against the employer of last injurious exposure. The ALJ stated that "meaningful exposure," as defined in *Scapa*, is not required in a workers' compensation claim, and, as Sinyard's own expert witness testified, an "injurious exposure" is any exposure exceeding the baseline presence of asbestos in the atmosphere. Finally, the ALJ found that Sinyard attempted to incorrectly shift the burden to McKenney's to establish an injurious exposure to asbestos while working for a subsequent employer, but it is the claimant's burden to prove which employer was his employer of last injurious exposure.

The Board affirmed the ALJ's denial of Sinyard's claim and agreed with the ALJ's ultimate finding that Sinyard did not carry his burden to prove McKenney's or Cleveland was his employer of last injurious exposure to asbestos. However, the Board reversed in part the ALJ's findings of fact and conclusions of law. The Board noted that the ALJ correctly placed the burden of proof on Sinyard, as McKenney's had no affirmative defense and bore no burden of proof against any subsequent employer. However, the Board determined that the ALJ erred in deeming the allegations in the Illinois lawsuit binding and conclusive admissions in judicio, as

7

admissions in judicio are only binding in the lawsuit in which they are made, and the allegations here were only evidentiary admissions or admissions against interest that Sinyard could explain or contradict. The Board stated that the allegations were evidence to be considered and weighed appropriately. Like the ALJ, the Board found that there was insufficient evidence that Sinyard's injurious exposure at McKenney's was his last injurious exposure. The Board explained that

> actions by [Sinyard] and others under [his] authority injected many questions into the claim regarding with whom [he] was employed at the time of his last injurious exposure. Such evidence undermined both [Sinyard's] contentions of last injurious exposure while working for McKenney's and his ability to prove his case by a preponderance of competent and credible evidence. After considering the opinions of the expert witnesses, lay witness testimony, credibility determinations by the [ALJ], and thousands of pages of documentary evidence, we find [Sinyard] did not carry his burden to prove either McKenney's or Cleveland was his employer at the time of last injurious exposure. The Board reversed the ALJ's apparent finding of injurious exposure at Cleveland, explaining that at most the evidence merely showed asbestos existed at the GM assembly plant in 1995.

Sinyard sought superior court review, arguing that he established through unrebutted expert causation testimony that his last injurious exposure to asbestos occurred with McKenney's and the Board committed legal error in finding otherwise.

Sinyard contended that the purported later exposures were based upon conjecture and speculation and were not supported by competent expert causation testimony showing meaningful exposure to asbestos contributing to his mesothelioma and that the Board applied the wrong legal standard because the burden of proof had shifted to McKenney's to establish a later injurious exposure.

The superior court reversed the Board's decision and entered an award in favor of Sinyard. The superior court stated that it had applied the "any evidence" standard to the Board's factual findings and construed the evidence in the light most favorable to McKenney's, but because the appeal related solely to a contention that the Board erroneously applied the law to the undisputed facts, the superior court would conduct a de novo review to determine whether the Board applied the wrong legal standard to the evidence. The superior court concluded that "[t]he evidence that was presented by McKenney's at the hearing attempting to establish that Mr. Sinyard had later exposures to asbestos failed to satisfy the legal standard applicable to causation evidence existing under Georgia law as established under the *Scapa* decision." The superior court explained that McKenney's did not offer any expert opinion testimony to rebut Dr. Abraham's affirmative causation testimony, and, in contrast to this testimony, McKenney's failed to establish that any later exposure to asbestos was

sufficiently meaningful, qualitatively or quantitatively, to serve as legal causation of Sinyard's mesothelioma. The superior court determined that mere evidence of exposure to asbestos, in the absence of competent expert opinion testimony serving to establish the exposure was sufficiently meaningful to serve as a cause of the disease, failed to meet the required legal standard to prove any later exposure was an alternate cause of Sinyard's disease or amounted to an injurious exposure.

After this Court granted their application for discretionary review, McKenney's and Travelers filed the instant appeal.

1. In two interrelated enumerations of error, McKenney's and Travelers argue that the superior court erroneously determined that the Board had made an error of law and failed to apply the "any evidence" standard of review to the Board's decision. They contend that: the Board did not rely on any improper expert opinion that a de minimis exposure to asbestos is sufficient to cause mesothelioma, McKenney's was not required to produce its own expert to rebut Dr. Abraham's opinion testimony, and the Board's finding that Sinyard failed to prove the identity of his employer of last injurious exposure is supported by some evidence. We agree that the superior court applied the incorrect standard of review to the Board's decision, and when the correct

10

standard of review is applied, the Board's decision must be upheld. Therefore, we must reverse the superior court's order.

As stated above,

> the superior court applies an any-evidence standard of review to the Board's findings of fact, construing the evidence in the light most favorable to the party prevailing before the Board, and lacks authority to substitute itself as a factfinding body in lieu of the Board. Erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, however, are subject to the de novo standard of review in the superior court. *Where it affirmatively appears that the Board's decision is based upon an erroneous legal theory*, and that for this reason the Board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the Board for further findings.

(Citations and punctuation omitted; emphasis supplied.) *Stokes*, supra, 313 Ga. App. at 506-507. See also *JMJ Plumbing v. Cudihy*, 319 Ga. App. 158, 159 (735 SE2d 148) (2012) ("[T]he findings of the Board, when supported by any evidence, are conclusive and binding. . . . If there is any evidence to support a finding of the Board, the superior court may not reverse the award, unless errors of law were committed.") (citations and punctuation omitted); *Lowndes County Bd. of Commrs. v. Connell*, 305 Ga. App. 844 (701 SE2d 227) (2010) ("[W]hen reviewing a workers' compensation

11

award, we construe the evidence in the light most favorable to the party prevailing before the State Board and must determine whether any competent evidence supports its decision.") (citation omitted). "Moreover, . . . every presumption in favor of the Board's award is indulged." (Citation and punctuation omitted.) *Footstar, Inc. v. Stevens*, 275 Ga. App. 329, 330 (620 SE2d 588) (2005). "However, if there is no conflict in the evidence, and but one legal conclusion can be reached therefrom, a finding contrary to that conclusion should be set aside." (Citation omitted.) *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990).

Here, construing the evidence in the light most favorable to McKenney's, we are bound to conclude that the Board's finding that Sinyard did not meet his burden of proving McKenney's was his employer of last injurious exposure to asbestos is supported by some competent evidence. Further, it does not affirmatively appear that the Board's decision was based upon an erroneous legal theory. Accordingly, we must reverse the superior court's order.

OCGA § 34-9-284 provides:

Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, by whom the employer was insured when such employee was last so

12

exposed under such employer shall alone be liable therefor, without right of contribution from any prior employer or insurance carrier. . . .

Sinyard bore the burden of proving which employer provided the last injurious exposure, as "[t]he claimant in a workers' compensation proceeding has the burden of proof to show that his injury is compensable. This tenet embodies the basic precept of OCGA § 24-4-1 which states that the burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential." (Citation and punctuation omitted.) *Copeland v. Continental Kewitt*, 218 Ga. App. 305, 306 (3) (461 SE2d 277) (1995). Compare OCGA § 34-9-17 (c) (an employer who claims an employee's injury was due to his willful misconduct bears the burden of proof as to such a claim); *White v. Nantucket Indus.*, 214 Ga. App. 542, 543 (448 SE2d 278) (1994) (employer bore burden of proof to show that employee, who suffered a work-related injury, subsequently suffered a change in condition and became unable to work due to another injury). Indeed, in order to show which employer provided the last injurious exposure, Sinyard was required to show that any last exposure caused him injury, specifically mesothelioma, and "[t]he claimant carries the burden of establishing causation." (Citation omitted.)

*Hughston Orthopedic Hosp. v. Wilson*, 306 Ga. App. 893, 895 (1) (703 SE2d 17) (2010).[1]

Here, although there was evidence showing Sinyard had an injurious exposure to asbestos while working for McKenney's, there was some competent evidence that he suffered an injurious exposure with a subsequent employer. Specifically, in his Illinois lawsuit, Sinyard alleged that while working for employers after McKenney's, he was "exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing [him] to develop the aforementioned asbestos disease . . . ." When "admissions in pleadings are introduced as evidence in a later and different action, they no longer operate as admissions in judicio but, rather, as evidentiary admissions. As evidence, such admissions may be explained or contradicted." (Citation omitted.) *Foster v. State*, 157 Ga. App. 554, 556 (278 SE2d 136) (1981). See also *Wise, Simpson, Aiken & Assocs., Inc. v. Rosser White Hobbs Davidson*

---

[1] We note that while the parties dispute whether the burden of proof was properly allocated below, "the improper assignment of the burden of proof alone may be harmless where both parties had ample opportunity to present evidence fully," *Dan Vaden Chevrolet v. Mann*, 234 Ga. App. 500, 501 (1) (506 SE2d 653) (1998) (citation omitted), and here neither party claims it was not given this opportunity. "For that reason, regardless of the burden of proof assignment, the dispositive issue is whether the State Board's determination [regarding whether McKenney's was the employer of last injurious exposure] was supported by some evidence." Id. at 502 (1).

*McClellan Kelly, Inc.*, 146 Ga. App. 789, 790 (1) (247 SE2d 479) (1978) ("[A]n admission contained in the pleadings of one party made by him in another case are admissible in evidence against him when relevant to an issue involved in another case.") (citation and punctuation omitted).

The fact that Sinyard's Illinois complaint was unverified does not render the allegations therein incompetent as evidentiary admissions or admissions against interest. Although this Court has previously held that an unverified pleading is usually not competent evidence, these holdings only concerned a party seeking to rely on its own pleading, often in opposing summary judgment, whereas McKenney's and Travelers rely upon the prior complaint of the opposing party, Sinyard. See, e.g., *Essien v. CitiMortgage, Inc.*, 335 Ga. App. 727, 729 & n. 4 (781 SE2d 599) (2016); *Jones v. City of Willacoochee*, 299 Ga. App. 741, 742 (683 SE2d 683) (2009); *Whimsical Expressions, Inc. v. Brown*, 275 Ga. App. 420, 422 (2) (620 SE2d 635) (2005); *Allen v. Cannon*, 273 Ga. App. 233, 234 (614 SE2d 861) (2005). More importantly, although recent cases have not addressed the issue, in *Tison v. South Ga. Ry. Co.*, 8 Ga. App. 91 (68 SE 651) (1910), this Court squarely held: "There was no error in admitting in evidence the admissions of the party under whom the defendant claimed possession, as contained in her petition filed in another court, even though

15

the petition was not verified." (citation omitted). See also *Lamar v. Pearre*, 90 Ga. 377 (1) (17 SE 92) (1892) (trial court did not err in admitting bill filed by plaintiffs in earlier action, despite fact that bill was not signed or sworn to by them, because they had elected to appear by counsel and all the material and necessary allegations of fact in the bill were effectively their declarations).

More recently, in *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 499-500 (748 SE2d 407) (2013), the plaintiff alleged in an initial complaint and an attached sworn information form that two named defendants and a number of other entities were responsible for her asbestos exposure, but she subsequently amended the complaint to omit any allegation that the nonparties were responsible. The Georgia Supreme Court held that the defendants could rely on the allegations in the initial complaint and sworn information form to defeat the plaintiff's motion for partial summary judgment on the issue of nonparty fault. Id. at 500-503 (1). The Supreme Court explained that cases holding that allegations, whether in a verified or an unverified complaint, may not be used to defeat a motion for summary judgment were inapplicable, because those cases "dealt with arguments presented by plaintiffs that the allegations in *their own* pleadings served to defeat the motion for summary judgment made by the opposing party." (Citations omitted; emphasis in original.) Id.

16

at 501 (1). The Supreme Court stated that the law governing the situation was expressed in former OCGA § 24-3-30. Id. The current version of that statute, OCGA § 24-8-821, provides: "Without offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings *of the other*." (Emphasis supplied.) Although *Fields* concerned allegations made within the same proceeding, the reasoning of *Fields* is instructive in the instant case.

The Supreme Court also explained in *Fields*, supra, 293 Ga. at 501 (1), that the admissions upon which the defendants wished to rely "were admissions of fact, i.e., that [the plaintiff] had been exposed to asbestos-containing products which the nonparty entities had produced or distributed." The Supreme Court rejected the plaintiff's contention that the admissions could not be considered as evidence because she lacked personal knowledge as to the facts in the sworn information form. The Supreme Court concluded: "It is incidental that this averred information may not have originated within plaintiff's personal knowledge; having placed it within the pleading as a statement of fact, plaintiff cannot escape the effect of [her] pleading strategy merely by asserting that the pleaded information was based on matters within the knowledge of a third person." (Punctuation omitted.) Id. Therefore, the Supreme Court concluded that the allegations, which had been withdrawn due to the plaintiff's

17

amendment of the complaint, could be considered as admissions against interest. Id. at 502-503 (1).

As referenced in *Fields*, admissions need not be based on a party's personal knowledge.

> An admission, in the law of evidence, is a statement by a party of the existence of a fact which is relevant to the cause of his adversary. To be admissible in evidence, admissions do not necessarily have to be founded on the personal knowledge of the party making them. The admission would not be made except on evidence which satisfies the party who is making it against his own interest, that they are true, and that is evidence to the jury that they are true. Admissions do not come in on the ground that the party making them is speaking from his personal knowledge, but upon the ground that a party will not make admissions against himself unless they are true.

(Punctuation omitted.) *Brooks v. Sessoms*, 47 Ga. App. 554 (1) (171 SE 222) (1933). See also *Mayo v. Owen*, 208 Ga. 483, 486 (1) (67 SE2d 709) (1951); OCGA § 24-6-602. Therefore, in light of the fact that admissions need not be based on personal knowledge, as well as the holdings in *Fields*, *Bison*, and *Lamar*, we conclude that the fact that Sinyard's Illinois complaint was unverified does not preclude McKenney's and Travelers from using the factual allegations therein as admissions in this case.

18

Thus, the record contained competent evidence that Sinyard was exposed to great amounts of asbestos while working for employers subsequent to McKenney's and that these exposures were injurious in that they caused his mesothelioma. The Board was permitted to find, based on this evidence, that McKenney's was not the employer which provided Sinyard's last injurious exposure to asbestos. See *Fields*, supra, 293 Ga. at 500-503 (1); see also *Travelers Ins. Co. v. Boyer*, 105 Ga. App. 830, 832 (126 SE2d 280) (1962) (employee's admission against interest was competent evidence of a change of condition that, while not demanding the Board's finding, authorized the finding).

Although Sinyard has attempted to explain or contradict the allegations in the Illinois lawsuit, it was for the Board as the factfinder to determine whether he sufficiently explained or contradicted the allegations. See *Wilson v. Ortiz*, 232 Ga. App. 191, 197 (3) (501 SE2d 247) (1998) ("The weight to be given the withdrawn admission by [the defendant] was for a jury to decide.") (citation omitted), overruled on other grounds, *Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 319 n. 2 (2); *Wooten v. Braswell*, 48 Ga. App. 312, 312 (2) (172 SE 679) (1934) ("The evidentiary value of admissions is not annulled by the contradictory testimony of the person

19

charged with making them. It is for the trier of the fact to say whether it was true or false when made.") (citations and punctuation omitted).

We are compelled to recognize that the allegations in the Illinois lawsuit constitute one piece of evidence of injurious exposure subsequent to Sinyard's time with McKenney's that is subject to differing interpretations, and are in contrast to the substantial evidence that Sinyard suffered an injurious exposure with McKenney's. Despite this apparent imbalance, however, "neither the superior court nor this Court has any authority to substitute itself as a factfinding body in lieu of the Board." *Brown Mechanical Contractors, Inc. v. Maughon*, 317 Ga. App. 106, 109 (1) (728 SE2d 757) (2012). If the Board's findings are supported by any evidence, the findings are "conclusive and binding, regardless of whether we would have reached the same result if given the opportunity to weigh the evidence in the first instance." (Citation and punctuation omitted.) Id. at 109-110 (1). "It is true that another fact-finder might have reached a different conclusion, given [the substantial evidence of injurious exposure at McKenney's]. But the record did not demand such a result, and at least some evidence supported the State Board's conclusions." *Hughston Orthopedic Hosp.*, supra, 306 Ga. App. at 897 (1).

20

Thus, the Board's decision must be upheld unless it affirmatively appears that the Board committed an error of law, See *JMJ Plumbing*, supra, 319 Ga. App. at 158-159; *Stokes*, supra, 313 Ga. App. at 506-507, and it does not affirmatively appear that the Board committed an error of law. We disagree with the superior court's determination that the evidence presented by McKenney's attempting to establish that Sinyard had later exposures to asbestos failed to satisfy the legal standard applicable to causation evidence under Georgia law, as established by *Scapa*. In this case, the allegations in the Illinois lawsuit constitute competent evidence that Sinyard was exposed to "great amounts" of asbestos after his time with McKenney's and that this exposure caused his mesothelioma. This evidence is not incompetent or speculative merely because it is not expert opinion evidence.

Sinyard's expert Dr. Abraham testified that a person can contract mesothelioma by inhaling asbestos fibers. While this is not a novel proposition, see *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1) (712 SE2d 537) (2011) ("That occupational exposure to asbestos is capable of causing mesothelioma is not in question.") (citation omitted), this expert testimony, along with the evidence permitting a finding that Sinyard inhaled "great amounts" of asbestos fibers subsequent to his time with McKenney's, supports the Board's decision. Compare id. at 30-31 (2) (there was

21

insufficient evidence to create a jury issue as to causation absent reliable expert testimony that exposure to defendant's product contributed to plaintiff's mesothelioma, but there was no other evidence the product contributed to the disease, and plaintiff's counsel acknowledged the case was ripe for summary judgment in the absence of expert testimony). In the circumstances of this case, McKenney's was not required to provide its own expert on the issue of the employer of last injurious exposure. See *J. D. Jewell, Inc. v. Marchbanks*, 119 Ga. App. 669, 670 (168 SE2d 206) (1969) ("[T]he absence of any expert medical testimony relative to [the claimant's] condition will not invalidate, as a matter of law, conclusions reached by the triors of fact in this respect, if supported by any evidence of probative value.") (citation omitted). See also *Rodrigues v. Georgia-Pacific Corp.*, 290 Ga. App. 442, 444-445 (661 SE2d 141) (2008) (in a toxic tort case, medical testimony stated only in terms of a "possible" cause may be sufficient proof of causation when supplemented by probative non-expert testimony on causation).

Indeed, in *Reynolds Const. Co. v. Reynolds*, 218 Ga. App. 23, 23-26 (459 SE2d 612) (1995), a workers' compensation case, this Court upheld the ALJ's finding that the claimant's stroke was caused by job-related mental worry and fatigue, despite the fact that the claimant did not offer any expert medical evidence to rebut the

22

employer's expert medical evidence presented in defense of the claim. This Court explained: "Longstanding Georgia law provides factfinders freedom to accept or reject evidence as they see fit, particularly expert opinion evidence. Expert testimony is not conclusive or controlling and is submitted for whatever the factfinder considers it to be worth." (Punctuation omitted.) Id. at 25.

It is true that "in toxic tort cases, proof of causation *generally* requires reliable expert testimony which is based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury."[2] (Citation and punctuation omitted; emphasis supplied.) *Fouch v. Bicknell Supply Co.*, 326 Ga. App. 863, 869 (1) (756 SE2d 682) (2014). However, this Court has never held that this general requirement in toxic tort cases is a categorical requirement in workers' compensation cases — even if it is advisable for a party seeking to show an injurious exposure to asbestos to provide an expert opinion.

---

[2] While workers' compensation cases and toxic tort cases are not identical, rules governing causation in toxic tort cases, particularly asbestos cases, can apply to workers' compensation cases involving asbestos. In order to prove an "injurious exposure" under OCGA § 34-9-284, a claimant must show that his exposure caused him injury, which is similar to the requirement imposed upon a plaintiff in a toxic tort case to show that a substance caused his injury. See *Butler*, supra, 310 Ga. App. at 25 (1) (in a toxic tort case, "specific causation is whether a substance caused a particular individual's injury") (citation and punctuation omitted).

23

Finally, it does not appear that the Board based its decision on the discredited notion that *any* level of exposure to asbestos may serve as a cause of mesothelioma. See *Scapa*, supra, 299 Ga. at 290-291 (in a toxic tort case, a "de minimis" contribution to an injury is not sufficient to establish legal causation under Georgia law, and a meaningful contribution is required). Indeed, the only specific items of evidence the Board discussed were the allegations in the Illinois lawsuit, whereby Sinyard alleged exposure to "great amounts" of asbestos. See id. at 292 n. 9 ("For a plaintiff to show that an exposure was more than de minimis, we do not mean to suggest that it is essential for the plaintiff's expert to estimate the extent of the exposure in precise quantitative terms."); *Fouch*, supra, 326 Ga. App. at 868 (1) ("[T]here is no specific requirement that the plaintiff [in a toxic tort case] show specific air measurement readings or dosage amounts in order to establish causation.") (citation omitted). Therefore, this case is unlike *Scapa*, supra, 299 Ga. at 286-294, where the Georgia Supreme Court held that an expert opinion was not helpful to the jury and did not "fit" the legal standard for causation because the expert opined that any exposure to asbestos above background levels was a cause of the plaintiff's mesothelioma, regardless of the extent of his actual exposure. See also *Butler*, 310 Ga. App. at 25-30 (1) (trial court did not abuse discretion in deeming not

24

scientifically reliable an expert's opinion that each exposure to asbestos above background levels contributed to causing plaintiff's disease).

While the ALJ found that an injurious exposure is any exposure exceeding the baseline presence of asbestos in the atmosphere and appeared to rely on evidence that was not competent on the issue of whether Sinyard was injuriously exposed to asbestos after his time with McKenney's — such as the fact that an asbestos abatement was performed at the GM plant *after* Sinyard worked there — there is no indication that the Board adopted the ALJ's finding or relied on this evidence. Indeed, the Board expressly rejected the ALJ's finding that Sinyard was injuriously exposed to asbestos while working for Cleveland at the GM plant, and the only evidence specifically discussed by the Board involved exposure to "great amounts" of asbestos.

> An award of the State Board of Workmen's Compensation, like the verdict of a jury, should, where possible, be given that construction which will uphold and validate it rather than a construction which will defeat and invalidate it. Every presumption in favor of its validity should be indulged in by the courts. As has been said, legal precision and nicety in the award are not to be required, and where an intent and meaning can be given to the award which will uphold it rather than defeat it, such intent and meaning should be adopted.

25

(Citation and punctuation omitted.) *Wright v. American Mut. Liability Ins. Co.*, 145 Ga. App. 155, 155-156 (2) (243 SE2d 261) (1978). Compare *Bouldware v. Delta Corp.*, 160 Ga. App. 100, 101 (286 SE2d 333) (1981) (reversing a workers' compensation award where it was "*clear* that the award was based on an erroneous legal theory") (emphasis supplied). Therefore, it does not affirmatively appear that the Board's decision was based on an erroneous legal theory.

In conclusion, "[b]ecause the Board's award was not legally erroneous and was supported by some evidence, the superior court erred in reversing it." *JMJ Plumbing*, supra, 319 Ga. App. at 163. Accordingly, we must reverse the superior court's order.

2. Our holding in Division 1 renders McKenney's and Travelers' remaining enumeration of error moot.

*Judgment reversed. Doyle, P.J., and Coomer, J., concur.*