A08A0755. RODRIGUES v. GEORGIA-PACIFIC CORPORATION.
(661 SE2d 141)

BLACKBURN, Presiding Judge.

In this toxic tort action, plaintiff Ronnie Rodrigues appeals the grant of summary judgment to defendant Georgia-Pacific Corporation, arguing that competent evidence showed that Rodrigues's exposure to chlorine chemicals at a Georgia-Pacific plant proximately caused Rodrigues's pneumonia. We hold that the expert affidavit submitted by Rodrigues, in which a physician testified to a reasonable medical certainty that the chlorine exposure caused his pneumonia, showed this causal connection, despite the physician's later deposition testimony indicating the causal connection was only a possibility. We further hold that even if the physician's testimony only showed a possible causal connection, the nonexpert evidence on causation sufficiently supplemented the physician's testimony to create an issue of fact. Accordingly, we reverse.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that while working for a contractor at a Georgia-Pacific plant in March 1998, Rodrigues was dismantling old machinery when he was suddenly exposed to a significant amount of chlorine or chlorine dioxide as he was unscrewing a valve, even though Georgia-Pacific was to have disabled the chlorine pipes leading to the machinery. Rodrigues immediately became ill, experiencing respiratory difficulties and nausea. His health worsened to pneumonia over the next few days, causing him to seek medical

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

treatment at a hospital emergency room, where he reeked of chlorine. The emergency room physician diagnosed Rodrigues with pneumonia due to chlorine inhalation before she referred him to a treating physician.

Rodrigues filed an action against Georgia-Pacific to recover for his injuries, asserting that Georgia-Pacific had negligently exposed him to the chlorine chemicals. Georgia-Pacific moved for summary judgment, submitting a scientific expert's affidavit that chlorine chemicals do not cause the bacterial pneumonia as suffered by Rodrigues, and that such a disease is commonly caused by smoking cigarettes. The expert noted that for years leading up to the incident at issue, Rodrigues had smoked heavily, and that the treating physician who cared for Rodrigues (after the emergency room physician) had diagnosed him with "tobacco pneumonia."

In response, Rodrigues submitted the affidavit of the emergency room physician, who noted that earlier in the same month that Rodrigues came to the hospital, 13 other workers from the Georgia-Pacific plant had presented to the hospital with respiratory problems caused by exposure to chlorine at the plant. Based on her examination of Rodrigues, she testified, "to a reasonable degree of medical certainty," that Rodrigues's bacterial pneumonia was "substantially contributed to by his exposure to chlorine or chlorine dioxide." She explained that chlorine's extremely irritating effect on respiratory membranes could result in pulmonary edema (such as was experienced by Rodrigues) and could substantially contribute to the development of pneumonia, particularly if the patient was a smoker.

Georgia-Pacific then took the deposition of the emergency room physician, in which the physician repeatedly characterized the causal link between the chlorine and Rodrigues's pneumonia as a possibility rather than a probability. Nevertheless, the physician did testify, to a reasonable degree of medical certainty, that Rodrigues's pulmonary edema as presented in the emergency room was most likely caused by chlorine gas inhalation. She further testified, based on her "sense of things," that the symptoms Rodrigues exhibited in the emergency room were consistent with exposure to chlorine chemicals.

Citing *Maurer v. Chyatte*[2] and other cases, Georgia-Pacific argued to the trial court that the physician's deposition showed she could only testify that the causal link between the pneumonia and the chlorine was a mere possibility as opposed to a probability, which could not withstand a motion for summary judgment. The trial court agreed, finding that despite the physician's affidavit establishing a

---

[2] *Maurer v. Chyatte*, 173 Ga. App. 343, 344-345 (3) (326 SE2d 543) (1985) (physical precedent only).

causal link based on a reasonable degree of medical certainty, her subsequent deposition testimony "never reaffirmed the causative link to a reasonable degree of medical certainty or probability, even when the question was specifically put to her by Plaintiff's counsel." Accordingly, the court determined that the "entirety" of the physician's testimony demonstrated "not a probability, but rather merely a possibility," of the requisite causal link between the exposure to chlorine and the bacterial pneumonia. Citing *Maczko v. Employers Mut. Liability Ins. Co.*,[3] the court ruled (on this ground alone) that summary judgment was proper. That order is the subject of this appeal.

In toxic tort cases, proof of causation generally requires reliable expert testimony. *Fulmore v. CSX Transp.*[4] Such proximate cause testimony should generally not speak in terms of possibilities, but should be "based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury." (Punctuation omitted.) *Zwiren v. Thompson.*[5] See *Maczko*, supra, 116 Ga. App. at 250 ("[t]he testimony must show at least a probable cause, as distinguished from a mere possible cause").

Nevertheless, medical testimony stated only in terms of a "possible" cause *may* be sufficient when supplemented by probative nonexpert testimony on causation. As reiterated in *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*:[6]

> There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, *in conjunction with other evidence, nonexpert in nature, indicating that such a relation exists*, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and probably result from the injury, *is sufficient to establish the causal relation.*

---

[3] *Maczko v. Employers Mut. Liability Ins. Co.*, 116 Ga. App. 247, 250 (157 SE2d 44) (1967).

[4] *Fulmore v. CSX Transp.*, 252 Ga. App. 884, 892 (1) (557 SE2d 64) (2001), overruled on other grounds, *Norfolk & Western R. Co. v. Ayers*, 538 U. S. 135, 159 (III) (C) (123 SC 1210, 155 LE2d 261) (2003).

[5] *Zwiren v. Thompson*, 276 Ga. 498, 501 (578 SE2d 862) (2003).

[6] *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 708 (2) (505 SE2d 232) (1998).

(Punctuation omitted; emphasis supplied.) See *Ga. Cas. & Surety Co. v. Jernigan*;[7] *Nat. Dairy Products Corp. v. Durham*.[8] Based on this reasoning, *Estate of Patterson* concluded: "Thus, the plaintiff must present medical expert opinion as to causation which may be aided by other medical or non-medical evidence that, in totality, shows causation, even though the medical opinion is weak, i.e., showing a reasonable possibility rather than a probability." Supra, 233 Ga. App. at 710 (2).

Based on these principles, the evidence here requires that we reverse the summary judgment granted to Georgia-Pacific for at least two reasons. First, the emergency room physician's affidavit unequivocally stated, to a reasonable degree of medical certainty, that Rodrigues's bacterial pneumonia was "substantially contributed to by his exposure to chlorine or chlorine dioxide." This is not stated in terms of possibilities; this is stated in terms of a reasonable degree of medical certainty, which raises the matter to at least a probability. Moreover, in her deposition, the physician reiterated, to a reasonable degree of medical certainty, that Rodrigues's pulmonary edema as presented in the emergency room was most likely caused by chlorine gas inhalation. These two statements alone provide the necessary "probability" testimony regarding causation needed to withstand a motion for summary judgment.

Nevertheless, the trial court discounted these statements by making several references to other testimony in the physician's deposition, in which the physician refused to express her opinion in anything more definitive than possibilities. "In effect, the trial court applied our state's contradictory testimony rule when it rejected [the physician's] affidavit[ ] and testimony. This is not permitted when the contradictory testimony is of a nonparty witness, even an expert witness." *Whitley v. Piedmont Hosp.*[9] As explained in *Whitley*, id., the whole court decision of this Court in *Ezor v. Thompson*,[10] subsequently affirmed by the Supreme Court of Georgia on this very issue (see *Thompson v. Ezor*[11]), had expressly rejected, in the context of a summary judgment motion, the notion of discounting an expert's affidavit in light of that expert's contradictory deposition testimony. Thus, an affidavit of a physician that establishes the necessary causal link in terms of probability or reasonable medical certainty, even though later contradicted by that physician in deposition testimony, is sufficient to withstand a summary judgment motion on the issue of

---

[7] *Ga. Cas. & Surety Co. v. Jernigan*, 166 Ga. App. 872, 877 (5) (305 SE2d 611) (1983).

[8] *Nat. Dairy Products Corp. v. Durham*, 115 Ga. App. 420, 423 (154 SE2d 752) (1967).

[9] *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 654 (1) (644 SE2d 514) (2007).

[10] *Ezor v. Thompson*, 241 Ga. App. 275, 278-279 (1) (526 SE2d 609) (1999).

[11] *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000).

causation. *Whitley*, supra, 284 Ga. App. at 655 (1). See also *Dalton v. City of Marietta*;[12] *North Ga. Elec. Membership Corp. v. Webb*.[13] Compare *Cannon v. Jeffries*[14] (where later deposition testimony was based upon facts not known to expert at time affidavit was made, deposition testimony that substantially qualifies the expert's opinion controls in summary judgment context). The trial court here erred in holding otherwise.

Second, even if the physician's testimony here were expressed only in terms of the chlorine being a "possible" cause of Rodrigues's injuries, other nonexpert evidence was presented that supplemented that testimony, which precluded summary judgment. Rodrigues testified that although he was in apparent good health, he immediately became ill upon his exposure to the chlorine, which continuously worsened into the pneumonia he suffered when he presented at the emergency room. As stated by Georgia-Pacific's own expert, Rodrigues as a smoker was more susceptible to bacterial pneumonia. We held in *Durham*, supra, 115 Ga. App. at 423-424, that medical testimony that a collision possibly caused the plaintiff's apparently inactive tumor to become actively cancerous and malignant was sufficient to show causation when accompanied by nonexpert testimony that "established the decedent's apparent good health prior to the collision and the onset of cancer symptoms closely following the collision." Similarly, Rodrigues's testimony of his apparent good health and the onset of pneumonia symptoms closely following his exposure to the chlorine could suffice to fill any gaps left by the physician's testimony that the chlorine only "possibly" caused the pneumonia.

Granting Georgia-Pacific summary judgment on the ground that the emergency room physician's testimony established causation only in terms of possibilities was error. We do not address the other grounds raised in the motion for summary judgment below, as such were not argued on appeal nor ruled upon by the trial court below.

*Judgment reversed. Miller and Ellington, JJ., concur.*

### ON MOTION FOR RECONSIDERATION.

In its motion for reconsideration, Georgia-Pacific makes three arguments regarding our above opinion: (i) this Court relied on facts not supported by the record; (ii) this Court overlooked contrary

---

[12] *Dalton v. City of Marietta*, 280 Ga. App. 202, 205 (1) (633 SE2d 552) (2006).

[13] *North Ga. Elec. Membership Corp. v. Webb*, 246 Ga. App. 316, 319 (1) (b) (540 SE2d 271) (2000).

[14] *Cannon v. Jeffries*, 250 Ga. App. 371, 372-373 (1) (551 SE2d 777) (2001).

controlling authority (*Beasley v. Northside Hosp.*[15]); and (iii) this Court incorrectly held that there was sufficient nonexpert evidence (combined with the expert medical evidence) to overcome summary judgment. For the reasons set forth below, we deny the motion for reconsideration.

Georgia-Pacific claims that this Court relied on two facts not supported by the record. First, Georgia-Pacific argues that, contrary to the statement in our opinion, the emergency room physician did *not* testify, to a reasonable degree of medical certainty, that Rodrigues's pulmonary edema as presented in the emergency room was likely caused by chlorine gas inhalation. This argument is belied by the following testimony:

> Q. Doctor, as to the pulmonary edema which you noted, what in your opinion *to a reasonable degree of medical certainty* would be the most likely cause of that edema?
> A. He did not reveal a history of cardiac disease at that time, so at that point it seemed more consistent with his stated history of chlorine gas inhalation.

(Emphasis supplied.) Although the physician later equivocated and referred to this as a mere possibility, this does not diminish the fact that in reviewing this summary judgment case, we must construe all evidence in favor of the nonmovant and need only determine whether *some* competent evidence supported plaintiff's claim, not whether *all* evidence supported that claim.

Second, Georgia-Pacific contends that no evidence showed Rodrigues was in good health immediately before the chlorine exposure in March 1998. This is also belied by the record, which contains the following testimony from Rodrigues:

> Q. How was your health the two to three months before March of 1998?
> A. It was pretty good.
> Q. Were you having any medical problems at all?
> A. No.
> Q. Do you recall having any illness in March of 1998?
> A. None.
> Q. Were you taking any medication at the time?
> A. None.

---

[15] *Beasley v. Northside Hosp.*, 289 Ga. App. 685 (658 SE2d 233) (2008).

In its second argument, Georgia-Pacific claims that this Court overlooked *Beasley v. Northside Hosp.*, supra, in which our Court held that the medical testimony on causation in that case was insufficiently definite to provide a jury with a basis for finding in the plaintiff's favor. In that case, however, we emphasized that the pertinent causation testimony in the expert affidavit included "no assessment of the likelihood that the hospital's alleged negligence caused [plaintiff's] injuries, no basis for the expert's conclusion, and no expression of probability that the expert's conclusion [was] accurate" (id. at 689-690); rather the only testimony as to the expert's level of certitude on the pertinent causation issue was later expressed by the expert in his deposition as being no more than a possibility. Here, the affidavit of the emergency room physician as to causation not only gave a basis for its conclusion but stated its conclusion "to a reasonable degree of medical certainty," which was even complemented by one "to a reasonable degree of medical certainty" statement on causation in the physician's deposition (as cited above). Because the expert expressed the requisite level of certitude in the affidavit and at one point in his deposition, we will not (on summary judgment) apply Georgia's contradictory testimony rule to reject that affidavit and testimony based on the physician's numerous other statements in his deposition that in fact his opinion was based only on possibilities.

On this same issue, Georgia-Pacific further argues in its motion for reconsideration (for the first time in the history of this case, whether in the trial court or in this Court) that this Court failed to apply the standards of OCGA § 24-9-67.1[16] to exclude consideration of the emergency room physician's affidavit. Georgia-Pacific misapprehends civil and appellate procedure. This Court does not exclude evidence; the trial court does. Had Georgia-Pacific desired that the trial court exclude this affidavit from consideration as not meeting the standards of OCGA § 24-9-67.1, then Georgia-Pacific should have made an appropriate objection or motion under OCGA § 24-9-67.1 (d) below, which would have allowed the trial court to conduct a hearing to inquire into the matter and to then make a ruling thereon. Georgia-Pacific's failure to make the appropriate challenge below justified the trial court's consideration of the expert evidence. See

---

[16] Georgia-Pacific moved for summary judgment in 2002, and the trial court ruled on the motion in 2007. OCGA § 24-9-67.1, enacted in 2005, applies retroactively to pending cases. *Nathans v. Diamond*, 282 Ga. 804, 808-809 (2) (654 SE2d 121) (2007).

*Ambling Mgmt. Co. v. Purdy*.[17] Moreover, "[i]ssues not raised at trial will not be considered for the first time on appeal." *Vickers v. Coffee County*.[18]

Finally, Georgia-Pacific claims that this Court erred in holding in the alternative that there was sufficient nonexpert evidence (assuming the physician gave only "possibility" testimony on causation) to overcome summary judgment. Georgia-Pacific makes two fundamental errors in drawing this conclusion. First, Georgia-Pacific once again inaccurately asserts that no evidence in the record showed that Rodrigues was in apparent good health at the time of the chlorine exposure. As discussed above, the record belies this assertion. Second, Georgia-Pacific cites to several cases holding that the proximity of events cannot *alone* establish that one's exposure to certain medical procedures or certain chemicals resulted in the physical ailment that followed soon thereafter. See, e.g., *Cherokee County Hosp. Auth. v. Beaver*[19] (evidence "that the injection was closely followed in time by the occurrence of pain and weakness in [plaintiff's] leg . . . *standing alone* . . . would not . . . be . . . sufficient to authorize an inference that the injection is a proximate cause of the weakness in [plaintiff's] leg") (emphasis supplied). However, the evidence that Rodrigues became ill soon after the chlorine exposure *does not stand alone* in this case but is accompanied by expert medical testimony that causally links the two events together (at a minimum as a possible cause based on Georgia-Pacific's own arguments). The combination of this evidence with the medical testimony meets the standard reiterated in *Estate of Patterson*, supra, 233 Ga. App. at 708 (2). See *Nat. Dairy Products Corp.*, supra, 115 Ga. App. at 423.

For these reasons, we deny the motion for reconsideration.

*Motion for reconsideration denied.*

DECIDED FEBRUARY 29, 2008 —
RECONSIDERATION DENIED MARCH 24, 2008.

*Walter D. Adams*, for appellant.

*Gilbert, Harrell, Sumerford & Martin, James L. Roberts IV, Mark D. Johnson, King & Spalding, Randall J. Butterfield*, for appellee.

---

[17] *Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 26-27 (2) (640 SE2d 620) (2006).

[18] *Vickers v. Coffee County*, 255 Ga. 659, 661 (340 SE2d 585) (1986) (addendum).

[19] *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 201-202 (1) (345 SE2d 904) (1986).