[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13810
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00179-CV-HLM-4

DAVID R. WILSON,
CHARLENE WILSON,

Plaintiffs-Appellants,

versus

TASER INTERNATIONAL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 16, 2008)**

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellants David and Charlene Wilson (the "Wilsons") brought claims for products liability, punitive damages, and loss of consortium against Defendant-Appellee TASER International, Inc. ("TASER"). The Wilsons assert that TASER, the manufacturer of an electrical stun gun, failed to warn of the allegedly known risk that exposure to the weapon could cause fractures and, as a result, Georgia State Trooper David Wilson suffered a fractured spine during a TASER training exercise. The district court granted TASER's motion for summary judgment, which the Wilsons now appeal. For the following reasons, we **AFFIRM**.

## BACKGROUND

The facts of this case, as supported by the evidence taken in the light most favorable to the Wilsons, are as follows:

On September 7, 2004, David Wilson attended a TASER certification class in Forsyth, Georgia at the Georgia Public Safety Training Center. Wilson was shown a slide presentation which caused him to believe that no injuries, except due to falls, had occurred during training. Wilson volunteered to be shocked as part of his training and was assured that he would be properly spotted and therefore would not be injured. Wilson was held by three spotters and shot in the back with a TASER by the trainer. Wilson described the pain following this

2

exposure as "unbelievable" and claims that he continued to experience intense pain after the shock was over. An ambulance was called and Wilson was taken to the hospital emergency room. The emergency room physician recommended that Wilson be admitted for pain control. Wilson, however, declined to be admitted, was given prescriptions for narcotic pain medication and was discharged with instructions to see his personal physician.

The following day, Wilson went to see Dr. Edward Meier, who specializes in family practice and occupational medicine. Dr. Meier noted that Wilson had continued to experience pain even after he was given Morphine, Percocets and muscle relaxers and that his pain was well out of proportion with the objective x-ray findings that he received from the hospital. Dr. Meier treated Wilson for back pain and muscle spasms and recommended physical therapy. On October 5, 2004, Wilson again visited Dr. Meier, who noted that Wilson was "doing a lot better and improved."

On October 28, 2004, Dr. Meier's partner, Dr. Michael Jackson, referred Wilson for an MRI. The MRI revealed two compression fractures of his thoracic spine. Dr. Jackson referred Wilson to orthopedic specialist Dr. Scott Bowerman for consultation and treatment. On August 23, 2005 and again on April 18, 2006,

Dr. Meier, after consulting with Dr. Bowerman, certified Wilson as unable to return to work due to the compression fractures caused by the TASER exposure.

Thereafter, the Wilsons brought their claims against TASER in district court, alleging that the failure to warn of a known risk caused David Wilson's compression fracture. At the close of discovery, TASER filed a motion for summary judgment, asserting that the Wilsons failed to present sufficient evidence of causation. The Wilsons responded to TASER's motion and attached the affidavit of treating physician Dr. Meier, who opined that the cause of Wilson's injury was the TASER exposure. TASER objected to this affidavit, asserting that Federal Rule of Civil Procedure 26(a)(2)(B) required the Wilsons to disclose Dr. Meier as an expert witness and submit an expert report for Dr. Meier.

The district court entered an order denying TASER's motion for summary judgment, but directing the Wilsons to obtain an expert report from Dr. Meier regarding his causation opinion and to make Dr. Meier available for a deposition. The Wilsons obtained an expert report from Dr. Meier and TASER deposed him.

In his expert report, Dr. Meier described his treatment of Mr. Wilson then stated that "[b]ased on my review of the records from the Monroe County Hospital Emergency Room, the records from physical therapy, the radiological report, Dr. Bowerman's consultation, and my treatment of Mr. Wilson which began the day

4

following his injury and continued for more than two months afterward, and based upon my medical training and experience, and to a reasonable degree of medical certainty, the cause of Mr. Wilson's compression fracture and his severe back pain was due to exposure to the TASER during the training exercise on September 7, 2004." Dr. Meier further noted that "[i]t is well documented in the medical literature that fractures may be caused by electric shock" and cited to the opinion of a Dr. Brown and to an attached article entitled "Thoracic Compression Fractures as a Result of Shock From a Conducted Energy Weapon: A Case Report."

TASER filed a <u>Daubert</u> motion to exclude Dr. Meier's expert testimony regarding causation, claiming that his opinions on that subject are unreliable.[1] The district court granted TASER's motion and excluded Dr. Meier's expert testimony regarding causation. The court explained that although Dr. Meier was qualified to offer opinions concerning medical causation, his opinion in this case was unreliable because the opinions of his colleagues, upon which he relied, were speculative and conclusory and because the article and one case study referred to by Dr. Meier did not provide reliable support for his opinion.

---

[1] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

5

Thereafter, the Wilsons moved to reopen discovery so as to depose Dr. Bowerman as their expert on causation. The court denied this motion as untimely.

TASER again moved for summary judgment, arguing that the Wilsons presented insufficient evidence of causation. The district court found that medical expert testimony was necessary to support the causation element of the Wilsons' failure to warn claim, and that because no admissible medical expert testimony regarding causation had been presented, that claim failed. Without the failure to warn claim, the district court found that the loss of consortium and punitive damages claims were also deficient as a matter of law. Accordingly, the district court granted summary judgment to TASER on all of the Wilsons' claims. The Wilsons filed a timely appeal, claiming that the district court erred (1) in excluding Dr. Meier's causation testimony and (2) in granting summary judgment to TASER.[2]

**STANDARD OF REVIEW**

---

[2] The Wilsons also argue that the district court erred in requiring Dr. Meier to provide an expert report because Rule 26(a)(2)(B) does not require treating physicians to submit expert reports regarding their diagnoses. We conclude, however, that this argument is not germane to the appeal. The district court did not exclude Dr. Meier's testimony for failure to submit an expert report; rather, after allowing extra time in which to file an expert report, the district court excluded Dr. Meier's testimony as unreliable.

6

We review the district court's grants of summary judgment de novo, reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party, and applying the same standard as the district court. Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998); Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1369 (11th Cir. 1982). A grant of summary judgment may be upheld on any basis supported by the record. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1118 (11th Cir. 1993).

We review a decision to exclude expert testimony under Daubert for abuse of discretion. General Elec. Co. v. Joiner, 522 U.S. 136, 138-39 (1997). This deferential standard is not relaxed even though a ruling on the admissibility of expert evidence may be outcome-determinative. Id. at 142-43. "Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the

7

ruling is manifestly erroneous." Id. (quoting Spring Co. v. Edgar, 99 U.S. 645 (1878)); see also N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp., 590 F.2d 415, 418 (2d Cir. 1978) (pointing out that Rule 702, although broadening "the range of admissible expert testimony," does not alter the "manifestly erroneous" standard of review). The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. Daubert, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)).

## ANALYSIS

**(1)    Dr. Meier's Expert Testimony**

We first consider the district court's decision to exclude Dr. Meier's testimony under Daubert. Federal Evidence Rule 702 governs the admission of expert testimony in federal court:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

8

District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.

The Wilsons first argue that the district court's application of the Daubert test to Dr. Meier's testimony was error. As a treating physician, the Wilsons assert that Dr. Meier's testimony regarding his "examinations and diagnosis should not be subject to an extensive analysis under Daubert or Kumho Tire."[3] Although we agree that a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an *opinion* unrelated to treatment which is "based on scientific, technical, or other specialized knowledge," that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by Daubert. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005); Leathers v .Pfizer, Inc., 233 F.R.D. 687, 688 (N.D. Ga. 2006).

In this case, although Dr. Meier was the treating physician, his opinion regarding the cause of Wilson's injuries was not needed to explain his decision making process, nor did it pertain to Wilson's treatment. See Henderson, 409 F.3d

---

[3]Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

9

at 1300 (citing Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.")). Dr. Meier did not need to determine how Wilson was injured in order to treat him in this case. Testimony regarding his diagnosis of the injury itself - that Wilson's spine was fractured - would be permissible as lay testimony without the Daubert analysis, but his statement about the cause of the injury was an hypothesis. "And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." Id. (holding that treating physician provided expert testimony where she expressed an opinion on causation where the determination of the cause of the injury did not aid in the treatment thereof) (citations omitted); see also Daubert, 509 U.S. at 592. Dr. Meier's opinions on causation, therefore, clearly fall within Federal Rule of Evidence 702's scope of "scientific knowledge" and must satisfy Daubert.

The Wilsons next argue that the district court abused its discretion in finding that Dr. Meier's opinion on causation was unreliable. Dr. Meier based his causation opinion on (1) the fact that Wilson's injury manifested itself directly after his exposure to the TASER, (2) conversations with and reports of Drs.

10

Bowerman and Murphy[4] in which they stated they believed TASER exposure could have caused Wilson's compression fractures, (3) one article reporting a case in which a patient exposed to TASER developed compression fractures of the spine,[5] and (4) the opinion of Dr. Brown, who conducted an independent medical examination in another case involving a patient exposed to a TASER device, that such exposure caused that patient's spinal compression fractures.[6] The Wilsons claim that Dr. Meier's reliance on the opinions of his colleagues in forming his opinion is an accepted medical practice which reliably supports his opinion. They further argue that although Dr. Meier is admittedly not an expert on the TASER device, one need not know the mechanics of how a TASER operates to render an

---

[4] Although he does not mention Dr. Murphy in his expert report, Dr. Meier stated at his deposition that he relied upon Dr. Murphy's opinion and expertise in reaching his conclusions.

[5] The district court found that this article was insufficient to provide reliable support for Dr. Meier's opinion because the article "contain[ed] only the briefest of descriptions of the patient's injury and treatment, and contain[ed] very little reasoning to support its conclusion that exposure to an electronic weapon may cause a compression fracture." On appeal, the Wilsons do not object to this finding of the district court.

[6] The district court found that Dr. Brown's opinion was also insufficient to support Dr. Meier's opinion because "the plaintiff in the other case may have had a very different medical history, physical condition, and course of treatment from Plaintiff David Wilson." The Wilsons also do not object to this finding of the district court.

opinion that severe muscle contractions caused by an electric shock can cause spinal fractures. Finally, they argue that because the injury occurred directly after the TASER exposure and no other incidents explain the injury, Dr. Meier's explanation is the most plausible. Accordingly, they assert that the exclusion of his opinion testimony on causation was in error.

In addressing the reliability of expert methodology, "[d]istrict courts 'have substantial discretion in deciding how to test an expert's reliability.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005) (quoting United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999)). In Daubert, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 509 U.S. at 595). These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. Kumho Tire, 526 U.S. at 152.

We conclude that the district court did not abuse its discretion in excluding Dr. Meier's testimony. Simply stated, Dr. Meier does not meet any of the Daubert

12

factors. He did not demonstrate that his opinion that TASER exposure may cause compression fractures is testable; he did not offer any error rate for his opinion; he did not show any evidence that his opinion has been peer reviewed or that he used a peer-reviewed source to reach his opinion; and, finally, he did not show the general acceptance of his opinion. See Bowers v. Norfolk Southern Corp., 537 F. Supp. 2d 1343, 1353-54 (M.D. Ga. 2007). Dr. Meier admittedly relied upon his colleagues' opinions in reaching his conclusion regarding causation, but, as the district court properly noted, he offered no basis for his colleagues' conclusions. Nothing in the record indicates that Drs. Bowerman or Murphy - any more than Dr. Meier - relied upon sufficient facts and applied a reliable methodology in reaching their opinions that Wilson's injury was caused by TASER exposure. Accordingly, the district court did not abuse its discretion in finding their opinions an insufficient basis for Dr. Meier's causation testimony. Also, during his deposition, Dr. Meier admitted that "quite osteoporotic patients can have spontaneous vertebral fractures just from mild movements and falls;" nonetheless, Dr. Meier did not perform a differential diagnosis or any tests on Wilson to rule out osteoporosis and these corresponding alternative mechanisms of injury. Although a medical expert need not rule out every possible alternative in order to form an opinion on causation, expert opinion testimony is properly excluded as

13

unreliable if the doctor "engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable" or if "the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness." Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1358 (N.D. Ga. 1999) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994)).

Furthermore, although a doctor usually may primarily base his opinion as to the cause of a plaintiff's injuries on his history where the plaintiff "has sustained a common injury in a way that it commonly occurs," a compression fracture of the spine is not the type of injury which commonly occurs from a shock by a TASER. Bowers, 537 F. Supp. 2d at 1354. Accordingly, Dr. Meier could not rely upon the temporal connection between the two events to support his causation opinion in this case. See Wheat, 46 F. Supp. 2d at 1359 (excluding testimony where expert failed to show that any other expert had reached his same conclusion, leaving only temporal relationship as basis for opinion). Indeed, the complexity of the causation issue in this case underscores the need for Dr. Meier to have done more

14

than simply adopt Wilson's history as his causation opinion and opine, without scientific support, that a TASER could somehow have caused his injury. A medical degree does not authorize Dr. Meier to testify when he does not base his methods on valid science. See Flores v. Johnson, 210 F.3d 456, 464 (5th Cir. 2000).

The trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152. In this case, applying the Daubert factors, the Wilsons simply did not prove by a preponderance of the evidence that Dr. Meier employed a reliable methodology to reach his opinions. For these reasons, we conclude that the district court did not abuse its discretion in excluding Dr. Meier's opinions regarding causation as unreliable and inadmissible.

**(2)    Grant of Summary Judgment**

Because we have concluded that Dr. Meier's expert testimony was properly excluded, the only issue remaining before us is whether the district court erred in granting summary judgment where the record contained no expert medical testimony on causation.

Because this action is based on diversity, Georgia substantive standards of law must apply. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under

Georgia product liability law, a plaintiff must prove as part of his prima facie case that the defendant's product was the proximate cause of the injuries alleged. Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985); Talley v. City Tank Corp., 279 S.E.2d 264, 269 (Ga. Ct. App. 1981). "As a general rule, issues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases." Ogletree v. Navistar Int'l Transp. Corp., 245 Ga.App. 1, 3-4, 535 S.E.2d 545 (2000). In product liability cases, proof of causation generally requires reliable expert testimony which is "based, at the least, on the determination that there was a *reasonable probability* that the negligence caused the injury." Rodrigues v. Georgia-Pacific Corp., 661 S.E.2d 141, 143 (Ga. Ct. App. 2008) (emphasis added); see Maczko v. Employers Mut. Liab. Ins. Co., 157 S.E.2d 44, 46 (Ga. Ct. App. 1967) ("The testimony must show at least a probable cause, as distinguished from a mere possible cause"). In the alternative, expert testimony stated only in terms of a "possible" cause *may* be sufficient if it is supplemented by probative non-expert testimony on causation. Rodrigues, 661 S.E.2d at 143.

As discussed above, the inference that a shock by a TASER can and did cause compression fractures in David Wilson's spine is not a natural inference that a juror could make through human experience. See McDaniel v. Employers Mut.

16

<u>Liab. Ins. Co.</u>, 121 S.E.2d 801, 804 (Ga. Ct. App. 1961). Therefore, medical expert testimony is essential to prove causation in this case. <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300 (11th Cir. 1999) (applying Georgia law and finding that expert medical testimony was essential to prove that silicone breast implants caused plaintiff's systemic disease); <u>see also</u> <u>Smith v. Ortho Pharm. Corp.</u>, 770 F. Supp 1561, 1565 (N.D. Ga. 1991) ("Scientific testimony by expert witnesses on the issue of causation plays an increasingly vital role in [Georgia] products liability litigation."). In order to survive summary judgment, the Wilsons must have presented a competent expert who could testify "to a reasonable degree of medical certainty" that the TASER caused his injuries, <u>see</u> <u>Allison</u>, 184 F.3d at 1320 (noting standard to which expert must testify), or, in the alternative, they must have presented medical testimony showing only a possibility of a causal relation between the TASER exposure and the injury in conjunction with other evidence, non-expert in nature, indicating that such a relation exists. In the absence of such expert medical testimony as to probable or possible causation, no genuine issue of material fact exists on this element of the claim, and the district court properly granted summary judgment for TASER. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986) (explaining that summary judgment is appropriate if there is a lack of sufficient probative evidence for the plaintiffs' case

17

because the, "inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits").

As we discussed above, the only expert medical testimony on causation proffered by the Wilsons was properly excluded as unreliable. The Wilsons, therefore, presented no admissible expert testimony about either a probable or possible causal relation between the TASER exposure and Wilson's injury. Accordingly, we conclude that no probative evidence supported a necessary element of the Wilsons' failure to warn claim and the district court did not err in granting summary judgment for TASER on this claim and the other claims dependant upon that claim.

**AFFIRMED.**